PAUL W. POTTER AND MIRROR TECH, INC. v. HILEMN LABORATORIES, INC., Now KNOWN AS HILEMN SILVERING SOLUTIONS, VALSPAR MIRROR COATINGS DIVISION OF THE VALSPAR CORPORATION v. SALEM DISTRIBUTING CO., INC., ROBERT A. LONG, AND ARTHUR J. LOCKHART

No. COA01-399

(Filed 21 May 2002)

### 1. Trade Secrets— silvering solution—consent agreement— patent expired

The trial court did not err by determining that plaintiffs' use of a certain silvering solution in making mirrors was a trade secrets case even though the patent for the substance already expired, because regardless of whether the substance is technically a trade secret, plaintiffs are bound by their agreement that they would treat it as one.

POTTER v. HILEMN LABS., INC.

[150 N.C. App. 326 (2002)]

**2. Trade Secrets— silvering solution—reversal of oral ruling in written order**

The trial court did not commit prejudicial error by reversing in a written order its earlier oral ruling that a certain silvering solution used to make mirrors was not a trade secret, because: (1) plaintiffs were not prevented from introducing evidence as a result of the order; and (2) the primary focus of plaintiffs' case at trial was to show that the use of the substance in silvering solutions was not a trade secret.

**3. Trade Secrets— silvering solution—violation of consent judgment—willfulness**

The trial court did not err by finding plaintiffs willfully violated a consent judgment based on plaintiffs' conduct of using a certain silvering solution to make mirrors, because: (1) a mistaken belief that the use of the chemical came under an exception does not negate the purposefulness or deliberateness of plaintiff individual's acts; and (2) plaintiffs may not be relieved of their duty to comply with a consent judgment's provisions based on their mistaken interpretation or finding the judgment difficult to interpret.

**4. Trade Secrets— silvering solution—appropriate relief under consent judgment**

The trial court did not err by determining that defendant's relief under a consent judgment, stating that a certain silvering solution used to make mirrors was a trade secret between the parties, included remedies provided for trade secret violations under the Trade Secrets Act or for breach of contract because: (1) by the plain language of the consent judgment, the parties entered into an agreement allowing the court and the undersigned judge to choose an appropriate remedy for a violation of the agreement; and (2) the trial court correctly determined that it had a choice of legal remedies not limited to contempt.

**5. Judgments— consent—jointly and severally liable**

The trial court did not err by holding plaintiffs to be jointly and severally liable under N.C.G.S. § 1B-1(a) in a trade secrets case because plaintiff president and majority shareholder, as well as plaintiff corporation, both agreed to be bound by the consent order.

POTTER v. HILEMN LABS., INC.

[150 N.C. App. 326 (2002)]

**6. Unfair Trade Practices— consideration of claim—no harm**

Although plaintiffs contend the trial court erred by considering defendant's claim of unfair and deceptive trade practices, plaintiffs suffered no harm and the argument will not be addressed because the trial court found the elements for this claim did not exist.

**7. Costs— attorney fees—Trade Secrets Protection Act**

The trial court erred by awarding attorney fees in a trade secrets case, because: (1) the Trade Secrets Protection Act does not allow for attorney fees as a remedy; and (2) even if the Act were utilized as a basis, plaintiff's misappropriation of the pertinent substance was not malicious.

Appeal by plaintiffs from judgment entered 14 August 2000 by Judge Melzer A. Morgan, Jr. in Rockingham County Superior Court. Heard in the Court of Appeals 23 January 2002.

*Bell, Davis & Pitt, P.A., by William K. Davis and Alan M. Ruley, for plaintiffs-appellants.*

*Adams & Osteen, by William L. Osteen, Jr., for plaintiffs-appellants.*

*Smith Helms Mulliss & Moore, L.L.P, by Bynum M. Hunter, Gregory G. Holland, and Allison Van Laningham, for defendant-appellee.*

THOMAS, Judge.

Plaintiffs, Paul W. Potter and Mirror Tech., Inc., appeal the trial court's judgment finding that they violated a consent decree by using a certain silvering solution (Substance X) in making mirrors. Plaintiffs contend the trial court erred in four ways: (1) in concluding that, as between the parties, this is a trade secrets case; (2) in reversing by written order its prior oral ruling that Substance X is not a trade secret; (3) in holding that plaintiffs knowingly and willfully violated the consent judgment; and (4) in determining the type of relief available to defendants.

For reasons discussed herein, we reverse in part and affirm in part.

The facts are as follows: From 1979 until 1990, Potter was employed by defendant, Hilemn Laboratories, Inc., now known as the

Hilemn Silvering Coatings Division of the Valspar Corporation (Hilemn). In 1991, Potter left Hilemn and became president of Mirror Tech., which also manufactures and sells silvering solutions used in making mirrors. It directly competes with Hilemn.

Potter and Mirror Tech filed a complaint in 1991 for declaratory relief against Hilemn, primarily seeking two declarations: (1) that a non-competition agreement executed between Potter and Hilemn in 1979 was invalid; and (2) that Hilemn possessed no trade secrets which plaintiffs could be enjoined from using under the North Carolina Trade Secrets Protection Act or other relevant law. Hilemn counterclaimed. It sought to restrain plaintiffs from using or divulging Hilemn's trade secrets and from manufacturing or selling any mirroring solutions similar to Hilemn's solutions, particularly its silvering solutions. Hilemn's pleadings were based in part on the Trade Secrets Protection Act, N.C. Gen. Stat. §§ 66-152 to 66-157 (1999), and alleged breach of fiduciary duty, breach of implied contract, and unfair and deceptive trade practices. Hilemn then filed motions for a temporary restraining order, accelerated discovery, and a preliminary injunction, all of which the trial court granted.

Hilemn also brought a third-party complaint against Salem Distributing Company, Inc., and its president and vice-president Robert A. Long and Arthur J. Lockhart, respectively. Hilemn contended they contacted Potter in an effort to appropriate Hilemn's trade secrets and confidential information.

The terms of the preliminary injunction were lengthy. The trial court found that Hilemn, through its research, had developed silvering solutions, and that two basic high efficiency concentrated solutions were made from Hilemn's own secret chemical formulations and processes: (1) Hilemn's three-part silvering solution; and (2) Hilemn's two-part silvering solution. The trial court further determined that "even though some of the elements used in Hilemn's trade secrets are known to chemists and to the industry . . . it is the combination of the various elements and their processing which make[s] them a trade secret." Potter, the court found, breached his duty to his former employer not to use such secret information.

The trial court made an effort to protect the interests of Hilemn while still allowing Potter to work in the mirror silvering industry. It first listed the substances and processes that plaintiffs were forbidden to use or divulge. Among the prohibitions was one banning the use of Substance X in making silvering solutions until 28 September

POTTER v. HILEMN LABS., INC.

[150 N.C. App. 326 (2002)]

1993. Provided plaintiffs did not violate this or any other prohibition, however, they were permitted to manufacture, use, or sell silvering solutions which did not contain Substance X. Those included some solutions developed by London Labs, Inc., Hilemn's only significant competitor, solutions not substantially similar to Hilemn's, and some solutions developed independently of Hilemn prior to 1 November 1990.

Approximately a year later, on 17 March 1992, the parties entered into a consent judgment. Significantly, it amended and strengthened the preliminary injunction's provision forbidding plaintiffs from divulging or using Substance X in making silvering solutions by deleting any time limit on the prohibition.

In 1999, Hilemn became aware of possible violations of the consent judgment by plaintiffs. Based on affidavits submitted by Hilemn, the trial court determined that plaintiffs may have been violating the judgment and permitted defendant to test Mirror Tech's formulas. The tests revealed that plaintiffs were using Substance X in its two-part silvering system. Hilemn requested that the court, as the language provides in the consent judgment, "determine the appropriate remedy for said violation."

At the hearing, Potter testified that following the entry of the injunction, he had begun to search for other mirroring solutions. On 15 April 1991, he purchased a two-part and a three-part mirroring solution formula from Mirror Labs. Mirror Lab's two-part formula called for the use of Substance X. Believing the use of Substance X in the Mirror Labs formula violated a London Labs patent, Potter used a different chemical until July of 1998, when the London Labs patent expired. He then started using Substance X. Potter said he believed he was allowed to use Substance X after the expiration of the patent since others in the industry could.

The trial court determined, however, that Substance X is a trade secret *as between plaintiffs and defendant* because of their agreement. It further found that, beginning in July of 1998, plaintiffs knowingly and willfully, but not maliciously, violated the consent order by using Substance X in its two-part silvering solutions.

The trial court concluded that: (1) Hilemn is entitled to recover from plaintiffs $233,499.17, the amount of plaintiffs' profits derived from using Substance X; (2) Hilemn is entitled to attorneys' fees for plaintiffs' bad faith misappropriation of a trade secret in the amount

of $43,594.25, but is not entitled to punitive damages; and (3) Hilemn is not entitled to nominal damages for unfair and deceptive trade practices because it suffered indirect, not actual, injury. Plaintiffs appeal.

Where the plain language of a consent judgment is clear, the original intention of the parties is inferred from its words. *Bicket v. McLean Securities, Inc.*, 124 N.C. App. 548, 552-53, 478 S.E.2d 518, 521 (1996), *disc. review denied*, 346 N.C. 275, 487 S.E.2d 538 (1997). The trial court's determination of original intent is a question of fact. *Id.* On appeal, a trial court's findings of fact have the force of a jury verdict and are conclusive if supported by competent evidence. *Foster v. Foster Farms, Inc.*, 112 N.C. App. 700, 706, 436 S.E.2d 843, 847 (1993). The trial court's determination of whether the language in a consent judgment is ambiguous, however, is a question of law and therefore our review of that determination is *de novo*. *Bicket*, 124 N.C. App. at 553, 478 S.E.2d at 521. "An ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993).

[1] By plaintiffs' first assignment of error, they argue the trial court erred in determining this to be a trade secrets case. Looking to the consent judgment for guidance, the court found: "Substance X is a trade secret under the unique circumstances of this case." While recognizing that the chemical has not been a trade secret since the "Peacock Lab patent expired in 1993 and the London Lab[s] patent expired in 1998," the court held that, "as between the plaintiffs . . . and the defendant Hilemn, the use of Substance X as a reducer in two-part silvering solutions was a trade secret." We agree with the trial court's conclusion that, regardless of whether Substance X is technically a trade secret, plaintiffs are bound by their agreement that they would treat it as one. *See Lampley v. Bell*, 250 N.C. 713, 716, 110 S.E.2d 316, 318 (1959) (a consent judgment is binding on the parties thereto).

[2] We also reject plaintiffs' second assignment of error, by which they contend the trial court erred in reversing by written order its earlier oral ruling that Substance X is not a trade secret. Although the trial court did find that, due to "the unique circumstances of this case" it "explicitly reverses its earlier ruling that Substance X is not a trade secret," plaintiffs failed to show that they suffered prejudice.

POTTER v. HILEMN LABS., INC.

[150 N.C. App. 326 (2002)]

*See, e.g., Reed v. Abrahamson,* 108 N.C. App. 301, 309, 423 S.E.2d 491, 495 (1992) (an erroneous ruling requires reversal only when the objecting party demonstrates it has suffered resulting prejudice), *cert. denied,* 333 N.C. 463, 427 S.E.2d 624 (1993). They were not prevented from introducing evidence as a result of the order. In fact, the primary focus of their case at trial was to show that the use of Substance X in silvering solutions was not a trade secret.

**[3]** By plaintiffs' third assignment of error, they contend the trial court erred in finding a violation of the consent judgment in that the conduct constituting the alleged violation was not willful and fell within listed exceptions. The consent judgment provides in pertinent part:

8. *[Plaintiffs] shall not divulge or use [Substance X] in making silvering solutions.*

. . . .

12. *Except as provided in Paragraphs 1-11 above:*

a. The plaintiffs . . . are not prohibited from manufacturing, using, or selling mirror solutions so long as such mirror solutions are

(2) not solutions which, through misappropriation as defined in G.S. 66-152(1), utilize any trade secrets of Hilemn, or

. . . .

(4) not three-part or two-part silvering solutions substantially similar to Hilemn's three-part and two-part silvering solutions (for the purposes of this Order, London Labs solutions are not considered substantially similar to defendant's three-part or two-part silvering solutions), or

(5) substantially similar to defendant's three-part and two-part silvering solutions, but the formulations of such solutions were developed and in existence before November 1, 1990 independently of the defendant's research and development.

b. This Order does not prohibit plaintiffs or third-party defendants from

(1) purchasing or licensing a formula for mirroring solutions which formula is presently legitimately owned by some non-party entity and was so owned before November 1, 1990 although

substantially similar to the defendant's three-part or two-part silvering solutions; or

(2) purchasing or licensing a process for mirroring solutions which process is presently legitimately owned by some non-party entity, and was so owned before November 1, 1990 although substantially similar to the defendant's three-part or two-part silvering solutions; or

(3) manufacturing or selling any mirroring solutions if plaintiffs . . . obtain the formula or process used for making mirroring solutions from some non-party source which presently legitimately owns such formula or process and was so owned before November 1, 1990 (for example, by obtaining another mirror solutions company, or by merging with another mirror solutions company, or by obtaining mirroring solutions from some non-party company)[.]

(Emphasis added).

Citing this Court in *Hancock v. Hancock*, 122 N.C. App. 518, 523, 471 S.E.2d 415, 418 (1996), plaintiffs contend that "evidence which does not show a person to be guilty of 'purposeful and deliberate acts' or guilty of 'knowledge and stubborn resistance' is insufficient to support a finding of willfulness." Plaintiffs do not argue their conduct was not purposeful or deliberate. Rather, they maintain the evidence fails to establish that they knowingly violated the consent judgment because Potter purchased formulas in which the use of Substance X was not substantially similar to defendant's solutions. Thus, his conduct fell within the exceptions listed in the consent judgment. Moreover, plaintiffs argue, Potter acted in good faith by using Substance X only after the London Labs patent expired, and therefore did not willfully violate the consent judgment. We disagree.

Paragraph (8) mandates that plaintiffs "shall not divulge or use [Substance X] in making silvering solutions." Paragraph (12) then lists conduct that is not prohibited. It begins: "Except as provided in paragraphs 1-11 above . . . ." Therefore, by the plain language of the consent order, there is no exception to paragraph (8)'s prohibition against the use of Substance X. A mistaken belief that the use of the chemical came under an exception does not negate the purposefulness or deliberateness of Potter's acts. Accordingly, the evidence supports the trial court's finding that Potter willfully violated the consent judgment.

POTTER v. HILEMN LABS., INC.

[150 N.C. App. 326 (2002)]

Plaintiffs further argue that, because of the exceptions, the consent judgment was too ambiguous to provide notice of the forbidden conduct.

"A consent judgment is a court-approved contract subject to the rules of contract interpretation. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) (citations omitted). By the plain language of paragraph (8) of the consent judgment, use of Substance X is forbidden. The consent judgment contains no exceptions to this prohibition. Plaintiffs may not be relieved of their duty to comply with its provisions because they are mistaken in their interpretation or find interpreting it to be difficult. Accordingly, we reject this assignment of error.

**[4]** By plaintiffs' fourth assignment of error, they argue that the trial court erred in determining defendant's relief under the consent judgment. Plaintiffs contend the award was not supported by the evidence or permitted by applicable law.

A consent judgment is the contract of the parties entered upon the record with the sanction of the court. *Crane v. Green*, 114 N.C. App. 105, 106, 441 S.E.2d 144, 144-45 (1994). Thus, it is both an order of the court and a contract between the parties. *See id.* If a consent judgment is merely a recital of the parties' agreement and not an adjudication of rights, it is not enforceable through the contempt powers of the court, but only through a breach of contract action. *Nohejl v. First Homes of Craven County, Inc.*, 120 N.C. App. 188, 190, 461 S.E.2d 10, 12 (1995).

Here, the consent judgment is not a mere recital of the parties' agreement. It contains findings of fact and an order based on those findings. It provides:

This Final Judgment By Consent is a full resolution of all claims asserted or that could have been asserted in this action, including damages, with the following provision: *This Court and the Undersigned Judge shall retain jurisdiction to enforce the terms of this Final Judgment by Consent.* Should the Court find that there has been a violation of this Final Judgment By Consent including a violation of the Permanent Injunction found in Exhibit A, *the Court shall determine the appropriate remedy for said violation.*

POTTER v. HILEMN LABS., INC.

[150 N.C. App. 326 (2002)]

Defendant argues that the foregoing language authorizes the trial court to award damages, costs, and fees in its discretion. Plaintiffs, however, contend that "*appropriate* remedy" limits the remedies to those allowed in a contempt proceeding. Therefore, plaintiffs argue, the trial court may not award damages based on remedies provided for trade secret violations under the Trade Secret Act or on breach of contract principles. We disagree.

By the plain language of the consent judgment, the parties entered into an agreement allowing "[t]his Court and the Undersigned Judge" to choose an appropriate remedy for a violation of the agreement. *See State ex rel. Envir. Mgmt. Comm. v. House of Raeford Farms, Inc.*, 101 N.C. App. 433, 444, 400 S.E.2d 107, 114 (plain language of a consent judgment is controlling), *writ of supersedeas and disc. review denied*, 328 N.C. 576, 403 S.E.2d 521 (1991). In fact, the trial judge who signed the original consent judgment also presided over the present case. However, as evident by the interpretations advanced by each party, the phrase "appropriate remedy" is susceptible to different meanings and therefore is ambiguous. The trial court, acting in the instant case as the trier of fact, resolves this ambiguity by considering "a range of factors including the expressions used, the subject matter, the end in view, the purpose and the situation of the parties." *Glover*, 109 N.C. App. at 458, 428 S.E.2d at 210.

Here, the trial court correctly determined that it had a choice of legal remedies not limited to contempt. To interpret "appropriate remedy" as plaintiffs argue would render superfluous the entire provision authorizing the court to determine a remedy and award damages. The language in the remedy provision is broad. Read in context with the entire judgment, it clearly shows an intent on the part of the parties to consolidate their potential claims based on a violation into one case. Therefore, the court did not err in looking to the North Carolina Trade Secrets Protection Act for guidance in fashioning an appropriate remedy because the wording of the consent judgment makes it appear that, as between the parties, Substance X is considered a trade secret. Nor did it err in finding that Hilemn may be entitled to relief under the law of restitution. Restitution measures the remedy by the wrongdoer's unjust enrichment, and seeks to force disgorgement of that gain. *See* 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 4.1(1), at 555 (2d ed. 1993); *see also id.* § 10.5(3), at 691 (listing restitution as a remedy for misappropriation of confidential information or trade secrets).

The trial court stated that the appropriate relief is the measure of plaintiffs' unjust enrichment, which the Trade Secrets Protection Act expressly permits as a measure of damages. *See* N.C. Gen. Stat. § 66-154(b) (1999). Accordingly, the court took the total amount of sales of the product that included Substance X, $953,388.20, and subtracted direct costs incurred by plaintiffs, $719,939.03, to determine the award amount of $233,449.17. The trial court did not subtract indirect costs such as health insurance, utilities, and uniforms, which would have been incurred with or without the offending sales.

In support of their contention that all costs, including indirect ones, should be deducted, plaintiffs cite cases involving lost profit damages due to a party's breach of contract. Lost profit damages means the non-breaching party is entitled to the contract price less cost of performance. *Bowles Distributing Co. v. Pabst Brewing Co.*, 80 N.C. App. 588, 597, 343 S.E.2d 543, 548 (1986). The non-breaching party may not recover the expenses saved from the result of being excused from performance by the other party's breach. *Hassett v. Dixie Furniture Co.*, 333 N.C. 307, 312-13, 425 S.E.2d 683, 685 (1993). Here, one party profited from violating the parties' consent judgment and the trial court sought to remedy the violation by, in effect, transferring those profits. The trial court's findings were that the additional expenses sought to be included by plaintiffs were fixed and not affected by the products at issue. We find no error in the trial court's calculation.

[5] The trial court also did not err in holding plaintiffs to be jointly and severally liable. Joint tort-feasors are two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them. N.C. Gen. Stat. § 1B-1(a) (1999). Potter, who is the president and majority shareholder of Mirror Tech, and Mirror Tech agreed to be bound by the consent order.

[6] Plaintiffs further argue the trial court erred in considering defendant's claim of unfair and deceptive trade practices. The trial court, however, found the elements for this claim did not exist. Plaintiffs suffered no harm and we do not address their argument.

[7] We agree with plaintiffs' contention that, absent statutory authority, attorneys' fees are generally not available. This principle is applicable here despite the broad remedy language in the parties' agreement. " 'As a general rule[,] contractual provisions for attorney's fees

**POTTER v. HILEMN LABS., INC.**

[150 N.C. App. 326 (2002)]

are invalid in the absence of statutory authority. This is a principle that has long been settled in North Carolina and fully reviewed by our Supreme Court . . . .' " *Delta Env. Consultants of N.C. v. Wysong & Miles Co.*, 132 N.C. App. 160, 167, 510 S.E.2d 690, 695, *disc. review denied and dismissed*, 350 N.C. 379, 536 S.E.2d 70-71 (1999) (quoting *Forsyth Municipal ABC Board v. Folds*, 117 N.C. App. 232, 238, 450 S.E.2d 498, 502 (1994)); *see also Harborgate Prop. Owners Ass'n v. Mountain Lake Shores Dev. Corp.*, 145 N.C. App. 290, 297-98, 551 S.E.2d 207, 212 (2001) (reversing the trial court's award of attorneys' fees due to lack of statutory authority despite an express provision in the parties' consent judgment allowing such fees); *Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 143 N.C. App. 1, 11-12, 545 S.E.2d 745, 751-52 (reversing the award of attorneys' fees due to lack of statutory authority despite an express contractual provision), *appeal dismissed and cert. allowed*, 354 N.C. 218, 553 S.E.2d 402, *aff'd*, 354 N.C. 565, 556 S.E.2d 293 (2001); *but see Bromhal v. Stott*, 341 N.C. 702, 703-05, 462 S.E.2d 219, 220-21 (permitting as an exception to the general rule the enforcement of attorneys' fees provisions contained in separation agreements based on public policy interests), *reh'g denied*, 342 N.C. 418, 465 S.E.2d 536 (1995).

The Trade Secrets Protection Act does allow for attorneys' fees as a remedy, provided "willful and malicious misappropriation exists." N.C. Gen. Stat. § 66-154(d) (1999). However, even utilizing the Act as a basis, Hilemn would not be entitled to attorneys' fees. The trial court specifically found that Potter's misappropriation of Substance X was not malicious. As a result, we hold that the trial court was without authority to award attorneys' fees.

Accordingly, the judgment of the trial court is reversed as to the award of attorneys' fees and is otherwise affirmed.

REVERSED IN PART; AFFIRMED IN PART.

JUDGES HUDSON and JOHN concur.