STATE OF NORTH CAROLINA

WAKE COUNTY

N.C. DEPARTMENT OF REVENUE,

Petitioner,

v.

INTEGON NATIONAL INSURANCE
COMPANY,

Respondent.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 14395

**ORDER AND OPINION ON
RESPONDENT'S MOTION TO
DISMISS PETITION FOR JUDICIAL
REVIEW AND PETITIONER'S
MOTION TO STRIKE**

**REMAND TO OAH FOR FURTHER
PROCEEDINGS**

1.      THIS MATTER is before the Court on Respondent Integon National Insurance Company's ("Integon") Motion to Dismiss the Petition for Judicial Review (the "Motion to Dismiss"), (ECF No. 11). The Motion challenges this Court's subject matter jurisdiction pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure, (the "Rule(s)"), on the grounds that the North Carolina Department of Revenue (the "Department") lacks standing to seek judicial review of a Final Decision by the Office of Administrative Hearings ("OAH" or "the tribunal") under N.C.G.S. § 150B-43.

2.      Also before the Court is the Department's Motion to Strike Portions of Integon's Supplemental Response Brief and Exhibits (the "Motion to Strike"), (ECF No. 53).

3.      The Court, having considered the motions, the related briefing, appropriate matters of record, and the oral arguments of counsel, concludes for the reasons stated below that it has subject matter jurisdiction with respect to this matter, and it **DENIES** the Motion to Dismiss. The Court further **REVERSES** the

Final Decision to the extent it is based on a purported admission by the Department and **REMANDS** the matter to the OAH to determine whether the matter is moot, and if not, for a hearing on the cross-motions for summary judgment and a determination on the merits. Having remanded this matter, the Court **GRANTS** the Motion to Strike without prejudice to either party's ability to present its evidence to the administrative law judge ("ALJ") for a determination of its admissibility on remand.

> *North Carolina Department of Justice, by Ashley Hodges Morgan, for Petitioner North Carolina Department of Revenue.*

> *Parker Poe Adams & Bernstein, LLP, by Kay Miller Hobart and Dylan Z. Ray, for Respondent Integon National Insurance Company.*

Earp, Judge.

## I. INTRODUCTION

4. The underlying dispute in this case is whether Integon is entitled to claim a tax credit for investing in renewable energy property. For years the Department answered that question in the negative, and litigation ensued. However, on the day before a scheduled hearing on cross-motions for summary judgment, the Department abruptly changed its position, withdrew its final determination, and stated that it would allow the disputed credit.

5. Thereafter, the parties jointly presented a consent order requesting that the OAH dismiss the action. However, the ALJ did not enter the consent order. Without first considering whether the Department's changed position and the presentation of the parties' proposed consent order rendered the underlying

controversy moot, the ALJ held that the language of the proposed consent order constituted an admission by the Department that Integon's legal position was correct, and he entered summary judgment on the merits in favor of Integon.

6. The Department now appeals that decision. Integon moves to dismiss the appeal contending that the Department, having withdrawn its final determination, does not have standing to invoke this Court's subject matter jurisdiction. In order to resolve the standing issue, the Court has been required to consider whether the Department is an aggrieved party, thereby further requiring the Court to determine whether the ALJ appropriately determined that the Department made a binding admission upon which to base a judgment on the merits.

7. The Court concludes that the Department did not make such an admission. Accordingly, there has been no valid determination on the merits, and the Department is an aggrieved party. Moreover, a determination on the merits will not be ripe until the ALJ first considers whether the controversy is moot given the Department's changed position and the parties' proposed consent order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

8. A Rule 12(b)(1) motion will be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to judgment as a matter of law." *Wilkie v. Stanley*, 2011 NCBC LEXIS 11, at **10 (N.C. Super. Ct. Apr. 20, 2011) (quoting *SouthStar Funding, LLC v. Warren, Perry & Anthony, PLLC*, 445 F. Supp. 2d 583, 585 (E.D.N.C. 2006)). Below, the Court cites the undisputed facts relevant to its subject matter jurisdiction.

9.     Integon is a property and casualty insurance company commercially domiciled and doing business in North Carolina.  (Index of Exs. for Resp't's Mot. Dismiss Ex. 1 [herein "Jt. Stip."] ¶ 1, ECF No 13.)

10.     The Department is an agency of the State of North Carolina that administers the State's tax laws and collects the taxes due from North Carolina taxpayers.  N.C.G.S. § 143B-218; (Jt. Stip. ¶ 6).

11.     As an insurance company, Integon is subject to North Carolina's gross premiums tax.  N.C.G.S. § 105-228.5(a); (Jt. Stip. ¶ 5).

12.     Integon timely filed an amended North Carolina gross premiums tax return for tax year 2016 ("Amended Return") claiming a credit in the amount of $1,853,733 for investing in renewable energy property pursuant to N.C.G.S. § 105-129.16A ("Energy Credit").  (Jt. Stip. ¶ 2.)  The statute permits a taxpayer "that has constructed, purchased, or leased" renewable energy property to receive a credit equal to thirty-five percent (35%) of the cost of the property if the property is placed in service in North Carolina during the taxable year.  N.C.G.S. § 105-129.16A.

13.     Even if a taxpayer does not itself construct, purchase, or lease renewable energy property to qualify for the Energy Credit, the taxpayer may still be entitled to receive an Energy Credit as part of its distributive share from a partnership.  N.C.G.S. § 105-269.15.  However,  the sale of Energy Credits is not permitted under North Carolina law.  (Petition for Judicial Review Ex. 1 at 7 ¶ 10 [herein "Final Decision"], ECF No. 3.)

14. On 30 January 2019, following an audit of Integon's Amended Return, the Department issued an Audit Report and Notice of Tax Assessment finding that the Energy Credit taken by Integon for tax year 2016 was improper "because the exchange of contributions constituted a disguised sale." (Jt. Stip. ¶¶ 7–14.)

15. On 15 March 2019, Integon filed a request with the Department for administrative review, objecting to the Department's disallowance of the Energy Credit. (Jt. Stip. ¶ 15.)

16. Following administrative review, on 3 January 2020, the Department issued a Notice of Final Determination ("Final Determination") again disallowing the tax credit. (Jt. Stip. ¶ 23.)

17. Thereafter, on 2 March 2020, Integon petitioned the OAH for review of the Final Determination pursuant to N.C.G.S. § 150B-23. (Jt. Stip. ¶ 24.)[1]

18. The parties engaged in discovery through mid-May 2021, before filing cross-motions for summary judgment on 22 July 2021 and 30 July 2021. (Pet'r's Mot. Partial Summ. J. Two Threshold Questions L., R. 2230; Pet'r's Mot. Summ. J., R. 7686; Resp't's Mot. Summ. J., R. 7764.)[2]

19. After the parties had fully briefed their cross-motions for summary judgment, Chief Administrative Law Judge Donald R. van der Vaart ("ALJ") issued an Amended Notice of Hearing on the motions to take place on 13 September 2021. (Am. Notice Hr'g, R. 17309.)

---

[1] Integon filed an amended petition as a matter of course under 26 N.C.A.C. § 03.0101(a) and N.C.G.S. § 1A-1 Rule 15(a) ("Amended Petition"). (Jt. Stip. ¶ 25.)

[2] Citations to the Official Record on Judicial Review, ECF Nos. 31–42, are denoted "R. __."

20.     On 12 September 2021, a day before the scheduled hearing, the Department informed Integon's counsel by letter that it had decided to withdraw the Final Determination, reverse the assessment attributable to its denial of the Energy Credits in tax year 2016, and issue a refund to Integon.  (App. Pet'r's Resp. Opp. Resp't's Mot. Dismiss Ex. A [herein "September 12 Letter"], R. 17346, ECF No. 44.) In its letter, the Department stated: "there is no longer an assessment from the Department subject to administrative review in the contested case at the Office of Administrative Hearings[.]"  (September 12 Letter.)

21.     On 13 September 2021, the day of the hearing, the Department filed a "Notice of Withdrawal of Agency Action" informing the tribunal that, *without conceding the correctness of any of the factual or legal arguments in this case,*" the Department had withdrawn the Notice of Final Determination and was issuing a refund to Integon for the 2016 Energy Credits.  (Notice of Withdrawal, R. 17343, emphasis added.)

22.     At the start of the hearing on 13 September 2021, and prior to addressing the summary judgment motions, counsel for the Department informed Judge van der Vaart that the Department was "in the course of canceling the assessment and granting a refund" to Integon, and the Department requested a recess to discuss "settling this matter."  (App. Petr's Resp. Opp. Resp't's Mot. Dismiss Ex. E [herein "Transcript"], R. 17571.)   The tribunal agreed to the recess. (Transcript, R. 17574.)

23.     Thereafter, the parties jointly presented a proposed consent Order for Refund and Dismissal to Judge van der Vaart.  (Transcript, R. 17574–75; App. C, R. 17380 [herein "Proposed Order for Refund and Dismissal"].)

24.     The Proposed Order for Refund and Dismissal, jointly presented by the parties, reflected the Department's decision to withdraw the Final Determination and to issue a refund to Integon in the amount of the Energy Credit plus applicable statutory interest.  In addition, the Proposed Order for Refund and Dismissal included this language: *"[b]y withdrawing the Final Determination, [the Department] does not dispute [Integon's] position in this contested case* that [Integon] is entitled to a refund for tax year 2016 as a result of the tax credits[.]"  (Proposed Order for Refund and Dismissal, emphasis added.)  It concluded, *"[t]here is no longer an agency action subject to administrative review in this contested case,"* and "[t]he matter is therefore closed."  (Proposed Order for Refund and Dismissal, emphasis added.)

25.     Despite agreeing on 13 September 2021 to present the Proposed Order for Refund and Dismissal jointly to the tribunal, Integon's position is that the Proposed Order for Refund and Dismissal was neither a "settlement" nor a "resolution." Integon characterizes it as "a unilateral withdrawal" of the Final Determination by the Department.  (Transcript, R. 17572.)

26.     After observing that the Department's withdrawal of the Final Determination gave rise to "a pretty unusual situation," Judge van der Vaart directed both parties to provide supplemental briefs on the tribunal's jurisdiction, and he took

the Proposed Order for Refund and Dismissal under advisement. (Transcript, R. 17575–76.)

27. On 15 September 2021, two days after the hearing, the parties filed a "Joint Notice of Filing Joint Consent Order" again requesting that Judge van der Vaart enter the Proposed Order for Refund and Dismissal presented to the tribunal on 13 September 2021. (App. Pet'r's Resp. Opp. Resp't's Mot. Dismiss Ex. C, R. 17382–83.)

28. On 17 September 2021, in response to Judge van der Vaart's direction that the parties brief the jurisdictional issue, the parties jointly filed a "Statement and Order" explaining that the Department had "voluntarily and unilaterally withdrawn and dismissed with prejudice the [F]inal [D]etermination in this matter" and again requesting that the Proposed Order for Refund and Dismissal be entered "because dismissal with prejudice is required by these factual developments." (App. Petr's Resp. Opp. Resp't's Mot. Dismiss Ex. D [herein "Statement and Order"], R. 17388.)

29. The parties observed in the Statement and Order that the statute granting OAH jurisdiction to hear contested tax cases, N.C.G.S. § 150B-31.1, defines "contested tax case" with reference to N.C.G.S. § 105-241.15 which, in turn, allows a taxpayer that "disagrees with a *notice of final determination* issued by the Department" to file a petition for a contested case action. (Statement and Order R. 17389) (emphasis added.) At that time, the parties agreed that upon the Department's withdrawal of the Final Determination, the OAH no longer had subject

matter jurisdiction to grant summary judgment because there was no Final Determination to contest. (Statement and Order, R. 17389.)

30. However, rather than enter the Proposed Order for Refund and Dismissal and dismiss the case, on 23 September 2021, the tribunal, concluding that it retained subject matter jurisdiction, instead issued a Final Decision granting summary judgment in favor of Integon and denying the Department's cross-motion for summary judgment. (Final Decision 8.)

31. Quoting a partial sentence in the jointly filed Proposed Order for Refund and Dismissal—a proposed order that was never entered—the ALJ determined that DOR's statement that it did "not dispute [Integon's] position in this contested case,' [ ] and that [Integon] was entitled to use of their tax credits" was a admission by the Department upon which to base summary judgment for Integon. (Final Decision 3.) The ALJ concluded, "[t]hrough Respondent's admission that Petitioner is entitled to tax credits Petitioner earned through investing in renewable energy projects, Petitioner did not purchase the credits through a 'sale,' " and he awarded summary judgment to Integon as a matter of law. (Final Decision 8.)

32. On 29 September 2021, the Department issued a refund to Integon in the amount of $1,820,357.27. (Index of Exs. Resp't's Mot. Dismiss Ex. 5, ECF No. 13.)

33. On 25 October 2021, the Department filed a Petition for Judicial Review ("Petition"), pursuant to N.C.G.S. § 150B-43. (ECF No. 3.)

34. Following designation to the North Carolina Business Court pursuant to N.C.G.S. § 7A-45.4(b), the case was assigned to the undersigned on 25 October 2021. (Designation Order, ECF No. 1; Assignment Order, ECF No. 2.)

35. On 15 December 2021, Integon timely filed its Motion to Dismiss, arguing that the Department lacks standing to petition this Court. (ECF No. 11.)

36. The Motion to Dismiss was fully briefed and the Court heard oral argument on 2 June 2022. The Motion is ripe for determination.

37. During oral argument on the Motion to Dismiss, and in response to the Court's questioning regarding the doctrine of mootness, the Department referenced OAH decisions in which the Department's withdrawal of a final determination resulted in dismissal. As a result, the Court permitted the parties to brief the doctrine of mootness in the context of the OAH decisions. (App. Pet'r's Supp. Br. on Doctrine of Mootness in the Office of Administrative Hearings Ex. A (Transcript of Motion Hearing) at 23–24:, ECF No. 50.) In response, each party filed a supplemental brief with exhibits. (ECF Nos. 49, 50, 51, 52.)

38. The Department subsequently moved to strike portions of Integon's supplemental brief and exhibits. The Motion to Strike has been fully briefed and is also before the Court for determination. (ECF Nos. 53, 54, 55, 56.)

### III. STANDARD OF REVIEW

39. Integon has moved to dismiss this appeal on the grounds that the Department does not have standing to pursue it. "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may

properly seek adjudication of the matter." *Orbitz v. Hoyle*, 2013 NCBC LEXIS 29, **7–8 (N.C. Super. Ct. June 21, 2013) (citations omitted). It is "a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Street v. Smart Corp.*, 157 N.C. App. 303, 305 (2003) (internal marks omitted). It "must be addressed, and found to exist, before the merits of [the] case are judicially resolved." *In re T.B.*, 200 N.C. App. 739, 742 (2009) (internal marks omitted). This is because "[i]f a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commer. Courier Express, Inc.*, 168 N.C. App. 175, 177 (2005) (internal citations omitted).

40.     The Department bears the burden of establishing subject matter jurisdiction. *Khan Bros. v. City of Charlotte*, 2015 NCBC LEXIS 25, **8 (N.C. Super Ct. March 5, 2015). When deciding a Rule 12(b)(1) challenge to its jurisdiction, the Court may consider matters outside the pleadings. *Id.* (citing *Tart v. Walker*, 38 N.C. App. 500, 502 (1987)).

41.     If subject matter jurisdiction exists, the Court's review of the OAH Final Decision is pursuant to N.C.G.S. § 150B-51. If the error alleged is one of law, the Court's review is *de novo*. N.C.G.S. § 150B-51(c). Further, "[i]n reviewing a final decision allowing . . . summary judgment, the court may enter any order allowed by . . . Rule 56. If the order of the court does not fully adjudicate the case, the court shall remand the case to the administrative law judge for further proceedings as are just." N.C.G.S. § 150B-51(d).

## IV.    ANALYSIS

42.    The North Carolina Administrative Procedure Act, N.C.G.S. § 150B-1(a) *et seq.*, provides for judicial review of administrative decisions.  The relevant statute in this matter is N.C.G.S. § 150B-43, which states in material part:

> Any party or person aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to the party or person aggrieved by statute or agency rule, is entitled to judicial review of the decision under this Article[.]

43.    This section has been interpreted as imposing five requirements on the party seeking judicial review: "(1) the petitioner must be an aggrieved party; (2) there must be a final agency decision; (3) the decision must result from a contested case; (4) the petitioner must have exhausted all administrative remedies; and (5) there must be no other adequate procedure for judicial review."  *In re Pet. of Wheeler*, 85 N.C. App. 150, 153 (1987).

44.    Integon's jurisdictional argument centers on whether the Department is a party aggrieved by the ALJ's decision.  A "party" is defined by statute as "any person or agency named or admitted as a party . . . and includes the agency as appropriate." N.C.G.S. § 150B-2(5).  "Agency" means "[a]n agency or an officer in the executive branch of the government of this State" and includes "a department, a division, a council, and any other unit of government in the executive branch."  N.C.G.S. § 150B-2(1b). The Department of Revenue is a department in the executive branch.  N.C.G.S. § 143B-217.

45.    The issue is whether the Department is aggrieved such that it has standing to seek judicial review.  Over half a century ago, our Supreme Court held

that the Tax Commissioner had standing in his representative capacity to appeal an administrative ruling by the Tax Review Board. *In re Halifax Paper*, 259 N.C. 589, 595–97 (1963). Specifically, the Court held that the Commissioner was "aggrieved by [an] opinion adverse to what he consider[ed] a fair and correct interpretation of law," noting that "[t]he decision of the Review Board is not a mere factual determination or a rule-making order; it is a legal interpretation vitally affecting the duties of the Commissioner and the fund he is charged with raising." *Id.* at 596. In so holding, the Supreme Court observed, "where statutes exist permitting appeals by persons aggrieved, appeals by public officials and governmental units are usually allowed in cases involving questions of law relating to taxation and public funds." *Id.* at 596–97.

46. Although *Halifax Paper* involved a predecessor to the Administrative Procedure Act, its rationale applies equally here. *See also McCarter v. N.C. Bd. Of Licensed Prof'l Counselors*, 2021-NCCOA-467, ¶ 18 (stating that, under the Administrative Procedures Act, judicial review statutes are to be reviewed liberally to preserve the right to review where possible).

47. In this case the Court, addressing whether the Department is aggrieved, looks at (1) whether the OAH retained jurisdiction to decide the merits of the case once the Department withdrew its Final Determination; and (2) whether the language of the proposed consent order that is at issue ("[b]y withdrawing the Final Determination, [the Department] does not dispute [Integon's] position in this contested case that [Integon] is entitled to a refund for tax year 2016 as a result of

the tax credits") constituted an admission by the Department supporting the ALJ's entry of summary judgment for Integon.

48. For the reasons stated below, the Court concludes that the Department is an aggrieved party with standing to appeal the ALJ's decision.

## A. OAH Subject Matter Jurisdiction

49. The Department argues that, by statute, the OAH's subject matter jurisdiction is limited to that provided by N.C.G.S. § 150B-31.1, which allows the OAH to hear a "contested tax case involving a disputed tax matter arising under N.C.G.S. § 105-241.15." (Pet'r's Resp. Opp. Mot. ["Br. Opp. Mot."] 6, ECF No. 43, *quoting* N.C.G.S. § 105B-31.1(a).) The latter statute allows a taxpayer who "disagrees with a notice of final determination issued by the Department" to contest that determination by filing a petition for a contested case hearing with the OAH. N.C.G.S. § 105-241.15(a). The Department's position is that if no Notice of Final Determination exists because the Department has withdrawn it, there is no contested case for the OAH to hear, and the only action left for the ALJ to take is to dismiss. (Br. Opp. Mot. 6.)

50. Integon responds that the Department has conflated the concept of subject matter jurisdiction with that of mootness, and it argues that at least two exceptions to the mootness doctrine support the ALJ's decision not to dismiss the matter. (Resp't's Supp. Resp. Br. 1–6, ECF No. 51.)

51. For his part, the ALJ determined that the tribunal retained jurisdiction: "Once the jurisdiction of a court or administrative agency attaches, the general rule

is that it will not be ousted by subsequent events." (Final Decision 1, fn 1.) He did not, however, address the mootness doctrine.

52. The Court agrees with the ALJ's conclusion that the tribunal retained jurisdiction over this matter despite the Department's withdrawal of its Final Determination and the parties' joint request for dismissal. The parties' request that the ALJ enter their proposed consent order raises questions with respect to the doctrine of mootness and its exceptions that require further consideration, but it does not strip the tribunal of jurisdiction. *See e.g., Alexander v. N.C. State Bd. of Elections*, 2022-NCCOA-52 (2022); *Chavez v. McFadden*, 374 N.C. 458 (2020).[3] The trouble here, however, is that the ALJ bypassed any consideration of mootness and proceeded to enter an order on the merits without first hearing the parties' opposing motions for summary judgment.

### B.   The Department's "Admission"

53. After determining that the OAH had jurisdiction, and without addressing mootness, the ALJ concluded that the language of the Proposed Order for Refund and Dismissal ("[b]y withdrawing the Final Determination, [the Department] does not dispute [Integon's] position in this contested case that [Integon] is entitled to a refund for tax year 2016 as a result of the tax credits") constituted an admission by the Department that Integon did not purchase the credits through a sale. This

---

[3] The Department contends, without citation to legal support, that the case law with respect to mootness has developed in the courts of general jurisdiction and that it is inapplicable to proceedings before the OAH, which has limited jurisdiction by statute. The Court determines that the rationale applied in the developed case law applies equally well with respect to the OAH.

conclusion expressly contradicted the Department's position in the Notice of Withdrawal of Agency Action that it did not concede the merits of Integon's legal position. As a result, the Department contends that it is aggrieved.

54. Integon counters that the Department is not aggrieved because the decision "simply memorialized the Department's representations that it did not dispute Integon's position in the case or that Integon was entitled to a refund as a result of the tax credits." (Resp't's Br. Supp. Mot. Dismiss 2, ["Br. Supp. Mot."], ECF No. 12.)

55. The Department responds that it made no such representations and explains that its position has always been that its withdrawal of the Final Determination meant that there was no controversy left for the ALJ to decide. It argues that the proper course of action at that point was for the ALJ to enter the parties' jointly proposed order and dismiss the case.

56. The record, when read as a whole, reveals that by submitting the Proposed Order for Refund and Dismissal, the Department attempted to eliminate the controversy, not to concede it. The Department was clear when it notified the tribunal on 13 September 2021 that it had withdrawn the Final Determination, "without conceding the correctness of any of the factual or legal arguments in this case" and that it considered the matter closed. (Notice of Withdrawal of Agency Action R. 17343.) The ALJ's subsequent decision hinges on whether a portion of a

sentence in the Proposed Order for Refund and Dismissal constitutes a binding admission.[4]

57. The Court first observes that the statement at issue was offered in the context of a proposed consent order reflecting an agreement between the parties. Such an agreement has contract implications. *Cf. KNC Techs., LLC v. Tutton*, 2019 NCBC LEXIS 72 (N.C. Super. Ct. Oct. 9, 2019) ("Under North Carolina law, '[a] consent judgment is the contract of the parties entered upon the record with the sanction of the court. Thus, it is both an order of the court and a contract between the parties.' ") (quoting *Potter v. Hilemn Labs., Inc.*, 150 N.C. App. 326, 334 (2002); *Walton v. City of Raleigh*, 342 N.C. 879, 881 (1996) ("A consent judgment is a court-approved contract").

58. However, as evidenced by the language and form of the proposed order, the parties' agreement in this case was conditioned upon the Court's recognition that "[t]here is no longer an agency action subject to administrative review in this contested case" and dismissal of the action in accordance with its terms. That did not occur.

59. Even assuming *arguendo* that a clause in a draft order could, in some circumstances, have effect as an admission, the Court concludes that this one does not. When a party equivocates, expresses uncertainty, or is inconsistent, the testimony does not constitute a binding admission. *Compare Cogdill v. Scates*, 290

---

[4] The full sentence reads: "[b]y withdrawing the Final Determination, Respondent does not dispute Petitioner's position in this contested case that Petitioner is entitled to a refund for tax year 2016 as a result of the tax credits received from Rockwood V." (Proposed Order for Refund and Dismissal.)

N.C. 31, 43 (1976) (finding judicial admission where plaintiff testified to "concrete facts, not matters of opinion, estimate, appearance, inference or uncertain memory," and her testimony was "deliberate, unequivocal and repeated. It left no room for the hypothesis of mistake or slip of the tongue.") *with Jones v. Durham Anesthesia Assocs., P.A.,* 185 N.C. App. 504, 510 (2007) (defendant's testimony, when viewed as a whole, does not constitute unequivocal, adverse testimony sufficient to constitute a judicial admission).

60.     Thus, to constitute a binding admission, the Department's statement must be clear, consistent, and unequivocal. This one was not. The reference to the "Petitioner's position" in the Proposed Order for Refund and Dismissal is imprecise, and when considering the entire record, particularly the Department's statement in the Notice of Withdrawal that it was "not conceding the correctness of any of the factual and legal arguments," the Court is not convinced that the language drawn from the Proposed Order for Refund and Dismissal evidences the Department's clear, consistent, and unequivocal intention to abandon its legal arguments.[5]

61.     What is clear from the record is that both the Department and Integon believed that withdrawal of the Department's Final Determination decision required dismissal of the contested case. In fact, the parties jointly filed their "Statement and Order" on 17 September 2021 specifically requesting that the OAH dismiss the

---

[5] Further, by including the introductory phrase, "[b]y withdrawing the Final Determination" before stating "Respondent does not dispute Petitioner's position in this contested case that Petitioner is entitled to a refund," the Department could mean merely that the act of withdrawing the Final Determination necessarily means that the Department did not intend to continue the contested hearing process. Notably, the ALJ does not consider the effect of this introductory language when reaching his conclusion.

contested case, "because dismissal with prejudice is required by these factual developments." (Statement and Order, R. 17388.) When the ALJ did not dismiss the case and instead treated an excerpt from the Proposed Order for Refund and Dismissal as an admission, the Department became aggrieved.

62. Integon, relying on *In re Petition of Wheeler,* 85 N.C. App. 150 (1987) and *Carter v. N.C. State Bd. of Registration for Prof'l Eng'rs & Land Surveyors,* 86 N.C. App. 308 (1987), argues that, regardless of the language of the Proposed Order for Refund and Dismissal, when a decision by an administrative agency has no effect on the petitioner's dispute, the petitioner cannot be aggrieved and therefore cannot seek judicial review of that decision. (Br. Supp. Mot. 7.) Here, the Department has said that it will not seek the tax from Integon for tax year 2016 regardless of the outcome of this appeal and, therefore, Integon argues, the Department cannot be aggrieved. (Br. Supp. Mot. 7–9; Petition 5.)

63. The Department responds that even though it will not seek the tax at issue, it is aggrieved because the ALJ's decision includes findings and conclusions that are "adverse to what it considers [to be] a fair and correct interpretation of law affecting the Department's duties and the public interest with which it is charged." (Br. Opp. Mot. 5.) To emphasize its point, the Department points to use of the Final Decision in other proceedings as proof that the effect of the decision reaches farther than just the tax directly at issue here. (Br. Opp. Mot. 5.)

64. Integon's reliance on *Wheeler* and *Carter* is misplaced. In both of those cases, the petitioner argued that it had standing in an administrative action involving

an agency and another party because the result of the action would impact the petitioner in other litigation. In this case, there is no third party. The Department has standing because its interests are directly impacted. And even though the Department has decided not to collect the tax from Integon, the ALJ's conclusion that the Department admitted an interpretation of tax law that the Department contends it did not admit affects the Department's enforcement of the law. Thus, the Department is aggrieved because, as the agency charged with enforcing the State's tax law, the decision "is a legal interpretation vitally affecting the duties" of the Department. *In re Halifax Paper*, 259 N.C. at 596.

65. Finally, although scheduled by the tribunal, the motion hearing before the ALJ was preempted by the parties' request to engage in settlement discussions.[6] Consequently, the cross-motions for summary judgment were not heard before the OAH's Final Decision was issued. (*See* Am. Notice Hr'g, R. 17309; Transcript, R. 17568–77; Final Decision.) Having noticed a hearing on the motions and directed that there be oral argument, the ALJ should not have considered the motions submitted for disposition until the close of the argument. *See* N.C.A.C. 03.0115 (2021).

66. In summary, the Court concludes that the Department was aggrieved by the OAH's Final Decision because (1) the doctrine of mootness was not considered, (2) a clause in the parties' proposed, but not entered, consent order for dismissal was

---

[6] The Court agrees with the ALJ that allowing the recess was appropriate. *See* 26 N.C.A.C. 3.0106 ("Informal disposition may be made of a contested case or an issue in a contested case by stipulation, agreement, or consent order at any time during the proceedings.").

treated as an admission by the Department on which to base conclusions of law and to enter summary judgment for Integon, and, (3) after noticing a hearing, the tribunal ruled on the cross-motions for summary judgment without conducting the hearing. As the ALJ stated in the Final Decision, "[s]ummary judgment is an extreme remedy and should be awarded only where the truth is quite clear." (Final Decision 4, quoting *Lee v. Shor*, 10 N.C. App. 231, 233 (1970).) It is not clear on this record.

## V.    CONCLUSION

67.    For the foregoing reasons, Respondent Integon National Insurance Company's Motion to Dismiss the Petition for Judicial Review is **DENIED.** The Final Decision Granting Summary Judgment for Petitioner is **REVERSED** to the extent it is based on a purported admission by the Department, and this matter is **REMANDED** to determine if it is moot and, if not, for a hearing and determination of the parties' cross-motions for summary judgment.

68.    Having remanded this matter, the Court **GRANTS** the Motion to Strike without prejudice to either party's ability to present its evidence to the ALJ for a determination of admissibility on remand.

**IT IS SO ORDERED,** this the 22nd day of November, 2022.

/s/ Julianna Theall Earp

Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases